UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| FREDERICK LEE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | 10 C 1157 |
| NORTHWESTERN UNIVERSITY, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motions of Defendants Northwestern University ("NU") and Northwestern University Police Department ("NUPD," collectively referred to herein as "Northwestern") to dismiss and to strike portions of Plaintiff Frederick Lee's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), 12(b)(1), and 12(f). For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

According to the allegations of the complaint, which we must accept as true for purposes of the instant motion,[1] Lee was hired as a campus police officer by NUPD in

---

[1] *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

September 2005.  He claims he experienced several incidents of discrimination and retaliation by his superiors and fellow officers at NUPD: one in June 2006, two in April 2007, one in September 2007, one in January 2008, four in April 2008, and one in June 2008.  He claims that this treatment was directed at him because he is Chinese-American.  Lee also claims that in or around November or December 2008, an NUPD lieutenant prepared a training schedule that segregated minority officers.  However, after the police department chief was alerted to the structure of the proposed training schedule, it was altered to include attendees of all races.  On August 18, 2009, Lee claims he found his shoes scattered in various areas of the NUPD locker room.

The following month, NU placed Lee on administrative leave and Lee underwent a psychological evaluation to determine his fitness for duty. During this leave, Lee could not access his personal laptop, voice recorder, CDs, and journals that he had stored in his campus locker.  He believes that the contents of these items were searched during that time.  On September 25, 2009, he filed a charge of discrimination with the EEOC.  His employment was terminated on October 20, and he filed a second charge on December 18.

On February 19, 2010, Lee filed the instant suit.  The currently operative pleading contains five counts pertaining to alleged violations of Title VII of the Civil Rights Act of 1964 as well as state law claims for conversion, trespass to chattels,

intentional infliction of emotional distress, and intrusion upon seclusion. Northwestern now moves to dismiss or strike particular portions of the complaint.

## LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion to dismiss is used to test the legal sufficiency of a Complaint. *Gibson v. City of Chicago*, 910 F. 2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F. 2d 459, 461 (7th Cir. 1993); *Perkins v. Silverstein*, 939 F. 2d 463, 466 (7th Cir. 1991). To be cognizable, the factual allegations within a complaint must raise a claim for relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To state a cognizable claim, a complaint must describe the claim in sufficient detail to give the defendant notice of what it is and the grounds upon which it rests and plausibly suggest that the plaintiff has a right to relief. *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007).

A complaint's legal sufficiency is not compromised simply because it does not anticipate or otherwise preemptively address potential defenses. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). If, however, the presence

of an affirmative defense is apparent from the allegations contained within a complaint, the affected allegations can be dismissed before a responsive pleading is filed. *Walker v. Thompson*, 288 F.3d 1005, 1009-10 (7th Cir. 2002). If the presence of an affirmative defense cannot be established without resort to information outside the complaint, it is improper to grant a motion to dismiss on the basis that an affirmative defense exists. *See Deckard v. General Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002).

**B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) requests that the court dismiss an action for lacking subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon a federal court. *In re Chicago, Rock Island, and Pacific R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). The plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *See Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). When reviewing a motion to dismiss under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekial v. Michel*, 66 F.3d 894, 897 (7th Cir. 1999).

**C. Motion to Strike Pursuant to Fed. R. Civ. P. 12(f)**

Fed R. Civ. P. 8 requires a "short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rule states that "each

averment of a pleading shall be simple, concise and direct." Fed. R. Civ. P. 8(e)(1). Fed R. Civ. P. 12(f) is designed to reinforce the requirement of Rule 8(e) that pleadings be simple, concise and direct, and a district court has discretion under Rule 12(f) to strike a complaint if it does not adhere to these guidelines. *Delta Consulting Gp., Inc. v. R. Randle Const. Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

## DISCUSSION

**I. Motions to Dismiss**

*A. Count III: Training Program Employment Practices*

Count III avers that Northwestern violated 42 U.S.C. § 2000e-2(d) when its lieutenant scheduled a training session for which attendees would be separated based upon their race or national origin. The statute states, *inter alia*, that it is unlawful for an employer who controls training or retraining to discriminate in admission to any training program on account of an employee's race, color, or national origin. 42 U.S.C. § 2000e-2(d). Northwestern contends that this count should be dismissed because Lee acknowledges that the schedule of attendance was desegregated before the training occurred. Given the plain language of the statute, we agree that Northwestern's actions in undoing the segregation of the attendees before the training took place removed any discriminatory element from the training program. As a result, the allegations of Count

III fail to state a claim upon which relief can be granted, and dismissal is therefore appropriate under Fed. R. Civ. P. 12(b)(6).

*B. Count IV: Hostile Work Environment*

Count IV of the amended complaint contends that the various incidents of discrimination and retaliation that took place between June 2006 and September 2009 constituted a hostile work environment. Title VII prohibits discrimination with respect to the "terms, conditions, or privileges of employment" on the basis of an employee's race, color, or national origin. 42 U.S.C. § 2000e-2(a)(1). Plaintiffs may establish a Title VII violation by showing their employer required them to work in a hostile or abusive environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Whether an unpleasant work situation rises to the level of a hostile environment depends on factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. Northwestern's motion challenges Lee's ability to premise liability on any event prior to November 2008, invoking the 300-day statute of limitations applicable to Title VII claims. 42 U.S.C. § 2000e-5(e); *Koelsch v. Beltone Elec. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995). If this argument is valid, only the incident that took place in August 2009 could be considered as a basis for liability.

Lee filed his EEOC charge on September 25, 2009, so the 300-day period for filing his EEOC charge commenced on November 29, 2008. He contends that the period should be extended to include events back to June 2006 under three theories: the continuing violation doctrine, equitable estoppel, and equitable tolling. The continuing violation doctrine allows a plaintiff to base a claim on a time-barred act by linking the untimely act with an act that is within the limitations period. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 353 (7th Cir. 2002). To proceed under a continuing violation theory, a plaintiff must describe alleged acts of discrimination that were part of an ongoing pattern of discrimination, with at least one act occurring within the relevant limitations period. *Nagle v. Village of Calumet Pk.*, 554 F.3d 1106, 1121 n.4 (7th Cir. 2009). Here, Lee contends that the various incidents he describes are part of an ongoing continuous act of discrimination by his colleagues and superiors. However, the events are distinct in time and circumstance, and there are a number of different people allegedly engaging in the discriminatory conduct. The incidents contained in his complaint are most accurately characterized as individual run-ins. Though some lasted a few days at a time, there is no overarching pattern of discrimination that emerges from the descriptions Lee has provided of the incidents at issue. As a result, Lee is unable to invoke the continuing violation doctrine in seeking to impose liability on Northwestern for incidents occurring before November 29, 2008.

Lee's next argument invokes the doctrine of equitable estoppel. The doctrine provides that an employer will be estopped from relying on a statute of limitations defense when the employer "takes active steps to prevent the plaintiff from suing in time." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990). Lee had several communications with Northwestern's Equal Employment Office (EEO) that took place around the time of the incidents of alleged discrimination that occurred before November 2008. He claims that he understood the EEO to be the EEOC, and that by using the EEO abbreviation, Northwestern took active steps to prevent him from filing a charge of discrimination before September 2009. This argument is unavailing for two reasons. First, the name applied to the university office was not directed at Lee as an individual, the name was known by employees throughout the university, and there is no indication that the choice of the name was related to Lee's problems during his employment. The mere existence of a name similar to that of the EEOC does not rise to the level of an "active step" taken by the employer in an effort to stave off an impending discrimination charge by an employee. Second, even if Lee's confusion about the EEO and EEOC were attributable to Northwestern, Lee was aware of the separate existence of the EEOC by at least April 2008. His charge of discrimination was not filed until more than a year after he obtained that knowledge. The delay past

the 300-day mark was therefore the result of Lee's inaction, not a purposeful action on Northwestern's part that would justify equitable estoppel.

Finally, Lee invokes equitable tolling. Equitable tolling applies when, despite all due diligence, the plaintiff is unable to obtain enough information to conclude that he may have a discrimination claim within the relevant limitations period. *Cada*, 920 F.2d at 451. The doctrine does not assume that the defendant made any effort to prevent the plaintiff from suing. *Id.* Rather, it assumes only that the plaintiff was aware of his injury, but for some reason could not find out in time that the injury was the result of the defendant's wrongdoing *Id.* In this case Lee was able to obtain enough information to conclude that he may have had a discrimination claim, as demonstrated by his repeated contact with Northwestern's EEO office and his complaint to a superior in April 2008 when he stated he wanted to resolve the issues he had internally rather than involving the EEOC. Therefore, the doctrine of equitable tolling does not apply.

For the reasons outlined above, claims stemming from events prior to November 28, 2009, are time-barred. Only the August 2009 incident, in which Lee found his personal property scattered in the locker room, is within the 300-day period. Given the discrete nature of that event, it is insufficient to provide a plausible foundation for a claim that Lee was subjected to a hostile work environment. Consequently, dismissal of Count IV is warranted under Rule 12(b)(6).

*C. Count VIII: Intentional Infliction of Emotional Distress*

Northwestern next requests dismissal of Count VIII of Lee's complaint, which alleges the tort of intentional infliction of emotional distress. In order to be liable for a claim of IIED, Northwestern's conduct vis-à-vis Lee must be fairly characterized as so outrageous and extreme that it transcends all bounds of decency. *See Public Finance Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). Northwestern moves to dismiss the IIED claim because they believe the conduct of the NUPD did not rise to the level of extreme and outrageous. Lee contends that he has sufficiently pleaded this element of the tort because of the combined effect of the various comments and actions taken by his fellow NUPD officers from June 2006 to August 2009, his inability to access his personal property and his belief that the contents of that property were searched, and the requirement that he undergo a psychological evaluation.

As Northwestern points out, the events that form the basis of Lee's claims for discrimination cannot support a state tort claim because of the preemption provisions of 775 ILCS 5/8-111(C). The events upon which Lee's employment discrimination claims rest are inextricably linked to civil rights violations that would be prohibited by the Illinois Human Rights Act. However, Lee's claims regarding his personal property are arguably separate from his discrimination claims. Without factual development of the nature of the materials on the laptop, in the journals, or on the CDs, as well as

whether they were viewed by Northwestern and the extent of any resulting disclosure, we cannot assess whether Northwestern engaged in conduct that exceeded the bounds of decency.

Northwestern's argument that Count VIII is preempted by the Illinois Workers' Compensation Act ("IWCA") is also unavailing at this stage of the proceedings. Though the IWCA provides the exclusive remedy for injuries compensable under that act, not all emotional/mental injuries are within its ambit. *See Baggett v. Industrial Comm'n*, 775 N.E.2d 908, 913-14 (Ill. 2002). The two cases cited by Northwestern do not hold to the contrary, and both predate *Baggett*, making the statement in their brief that it is well-established in Illinois that all claims of intentional infliction of emotional distress fall within the scope of the IWCA unconvincing. *Collier v. Wagner Castings Co.*, 408 N.E.2d 198, 202 (Ill. 1980); *Hunt-Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1016 (7th Cir. 1997). Consequently, dismissal of Count VIII is not appropriate under Rule 12(b)(6) or Rule 12(b)(1).

*D. Count IX: Intrusion Upon Seclusion Claim*

Finally, Northwestern seeks dismissal of Count IX, which avers that Northwestern tortiously intruded upon Lee's seclusion by searching the contents of his personal laptop, journals, CDs, and voice recorder. According to Northwestern, Lee cannot state a claim because his work locker is his employer's property and therefore

not private.  This argument misses the point, as Lee alleges not only that his locker was searched but that its contents, including devices that could contain highly personal information, were searched.  To the extent that the tort of intrusion upon seclusion is recognized in Illinois, it "depends on some type of highly offensive prying."  *Lovgren v. Citizens First Nat'l. Bank of Princeton*, 534 N.E.2d 987, 989 (1989).  As discussed with regard to Lee's emotional distress claim, an assessment of whether any prying took place, let alone whether it was of a sort that would be highly offensive, cannot take place without factual development beyond what is contained in the complaint.  Accordingly, Count IX does not fail to state a claim upon which relief can be granted, and the motion to dismiss it is therefore denied.

## II.  Motion to Strike Pursuant to Fed. R. Civ. P. 12(f)

Finally, Northwestern requests that paragraphs pertaining to time-barred events and footnotes within the amended complaint be removed from the pleading.  Allegations may be stricken if the matter bears no possible relation to the controversy or may cause the objecting party prejudice.  *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 664 (7th Cir. 1992). Despite our conclusion that events preceding November 2008 cannot provide a basis for liability, their inclusion within the complaint provides background information to the timely claims as well as the state law claims.  They are thus not irrelevant, as Northwestern claims.

With regard to the footnotes, Northwestern's objection is largely cosmetic. While formulating an answer to these additional allegations may be somewhat unwieldy, it is no less unwieldy than if the same information had been formatted as paragraphs within the main body of the complaint. Consequently, Northwestern's objection is basically an aesthetic one, rather than a legitimate argument that they contain redundant, immaterial, or impertinent or scandalous matters. Therefore, the motion to strike is denied in its entirety.

## CONCLUSION

Based on the aforementioned, Northwestern's motion to dismiss and strike is granted in part and denied in part.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:     July 13, 2010